UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

**ROBYN T. WINDSOR** and
**FRANCIS S. WINDSOR**,

    **Plaintiffs,**

    v.                                                                                   Case No. 22-CV-734-SCD

**STATE FARM FIRE AND CASUALTY COMPANY,**

    **Defendant.**

─────────────────────────────────────────────

DECISION AND ORDER
RE: PLAINTIFFS' CLAIMS FOR ADDITIONAL LIVING EXPENSES

─────────────────────────────────────────────

       In this diversity action, Robyn and Francis Windsor seek damages and other relief from State Farm Fire and Casualty Company for its refusal to pay certain expenses allegedly due under the Windsors' homeowners insurance policy. The limited issues here are whether, as a matter of law, State Farm breached the policy by not timely paying the additional living expenses ("ALE") the Windsors incurred after being forced out of their home and whether, as a matter of law, State Farm engaged in bad faith in processing that claim. Both sides have moved for summary judgment. I will deny the plaintiffs' motion for partial summary judgment and partly grant the defendant's motion, to the extent the ALE claims will be dismissed without prejudice.

## BACKGROUND

       By now, the court and the parties are familiar with the factual and procedural history of this case. The Windsors own a home overlooking Green Lake (Wisconsin) that was insured by State Farm under a homeowners policy, effective from June 28, 2021, to June 28, 2022. *See*

Pls.' Facts ¶¶ 1–7, ECF No. 89. The policy provided dwelling coverage for "accidental direct physical loss to the property." Malloy Declaratory J. Aff. Ex. 2, at 16, ECF No. 20-2. The policy also provided loss of use coverage for additional living expenses: "When a loss insured causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months." *Id.* at 12. The limit for loss of use coverage was $305,400.00. *Id.* at 42.

On July 1, 2021, blasting on a neighboring property damaged the Windsors' new home. Pls.' Facts ¶ 11. The Windsors called State Farm on July 7, 2021, to report the loss. *Id.* ¶ 12 (citing Malloy Summ. J. Aff. Ex. 2, ECF No. 67-2 at 66–67; Schmidt Decl. Ex. 8, ECF No. 78-8 at 7). After State Farm rejected their demand from appraisal, the Windsors sued State Farm in federal court for declaratory judgment, breach of contract, and bad faith. *Id.* ¶¶ 13–15; *see also* Compl., ECF No. 1. As part of their breach of contract claim, the Windsors assert that "State Farm cannot fairly or in good faith ignore reasonable additional living expenses to be incurred by the Windsors in relation to the blast-related damage to the Home." Compl. ¶ 37(e). The matter was randomly assigned to this court, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3 & 8. In June 2023, I granted the Windsors' motion for declaratory judgment and directed the parties to appraisal. *See* Decision & Order, ECF No. 31. The appraisal panel issued its award in September 2024; the panel did not appraise any loss of use coverage. *See* Pls.' Facts ¶¶ 17–19.

Shortly after the appraisal panel issued its award, the Windsors purchased three homes to house themselves and nine of their children while the Green Lake property was being repaired or replaced. *See* Pls.' Facts ¶¶ 5, 24–25. The Windsors paid cash for the three homes

2

Case 2:22-cv-00734-SCD   Filed 03/13/26   Page 2 of 13   Document 101

and contributed each home to a limited liability company. *See* Pls.' Resp. to Def.'s Facts ¶ 30, ECF No. 98 (citing Schmidt Decl. Ex. 5, ECF No. 78-5).[1] Each LLC has one member, Windsor Revocable Trust. Def.'s Facts ¶¶ 27–28, ECF No. 92 (citing Malloy Decl. Ex. 2, ECF No. 95-2). The trustees of Windsor Revocable Trust are Francis and Robyn Windsor. *Id.* ¶ 29.

On November 25, 2024, the Windsors made their Rule 26 initial disclosures. Pls.' Facts ¶ 20 (citing Schmidt Decl. - Pls.' Mot. Summ. J. Ex. 1, ECF No. 90-1). The Windsors indicated in those disclosures that they were claiming damages for (among other things) "[a]ll additional living expenses incurred during the rebuild of [their] home." Schmidt Decl. - Pls.' Mot. Summ. J. Ex. 1, at 3. However, because the rebuild was not yet underway, the disclosures did not contain a detailed computation or documents supporting a claim for additional living expenses. *See* Def.'s Facts ¶ 9; Pls.' Resp. Def.'s Facts ¶ 9.

Several days after the Windsors submitted their initial disclosures, the Town of Green Lake issued a raze order for their home. Pls.' Facts ¶ 21. The Windsors and their family moved out of the Green Lake home on or around December 23, 2024, and moved into the three homes owned by the LLCs. *Id.* ¶ 26. The Windsors entered into residential rental contracts with each LLC. Def.'s Facts ¶¶ 31–32 (citing Schmidt Decl. Ex. 5, at 13, 26, 39). Although each rental agreement lists a monthly rent ranging from $3,000 to $3,200, the Windsors have not made any payments to the LLCs. *See id.* ¶¶ 34–35. The Green Lake house was torn down on January 8, 2025. Pls.' Facts ¶ 23. Since then, the Windsors have "started the process of rebuilding their home." *Id.*

After State Farm paid the Windsors what the insurer believed was the remainder of the dwelling coverage policy limits, the parties agreed to go to mediation. *See* Def.'s Facts ¶ 10;

---

[1] The purchase price of the homes ranged from $334,900.00 to $357,000.00. *See* Schmidt Decl. Ex. 5, at 1–37.

Pls.' Resp to Def.'s Facts ¶ 10. The parties dispute what occurred during portions of those settlement conferences. *See* Pls.' Facts ¶¶ 28–32; Def.'s Facts ¶¶ 11–12. However, it is undisputed that at some point the Windsors' lawyer indicated that his clients would be seeking loss of use coverage during the reconstruction of their home. It is also undisputed that, during the mediation, State Farm was provided copies of the rental agreements. *See* Def.'s Facts ¶ 13; Pls.' Resp. to Def.'s Facts ¶ 13.

Thereafter, the parties continued to discuss the loss of use issue. On May 7, 2025, State Farm's lawyer sent the Windsors' lawyer a letter requesting that the Windsors update their initial disclosures to clarify their claimed damages. Def.'s Facts ¶¶ 14–15 (citing Kallie Aff. Ex. 17, ECF No. 80-3). State Farm's lawyer explicitly asked if the Windsors were making a claim for additional living expenses and, if so, whether that claim had been communicated to State Farm. *See* Kallie Aff. Ex. 17, at 2. Around that same time, State Farm served more specific and tailored discovery requests to gather more information about the loss of use issue. Def.'s Facts ¶ 16. The Windsors responded in late June 2025 and provided State Farm the purchase contracts, warranty deeds, LLC registrations, LLC operating agreements, LLC employer identification numbers, rental contracts, and (where applicable) cancelation notices. Pls.' Facts ¶ 35.

On July 25, 2025, the Windsors' lawyer sent State Farm's lawyer a letter itemizing the damages the Windsors intended to pursue at trial. *See* Pls.' Facts ¶¶ 36–37 (citing Schmidt Decl. Ex. 1, ECF No. 78-1). These included costs for debris removal, landscaping, construction costs, punitive damages, prejudgment interest, attorneys' fees and costs, as well as additional living expenses, totaling "at least" $403,298.05. Schmidt Decl. Ex. 1, at 1–3. Counsel indicated that the Windsors would be seeking the policy limits for loss of use

4

coverage. *Id.* at 2. Counsel explained in a footnote that the Windsors had already "incurred $107,199.76 in additional living expenses, including: (1) moving expenses to date of $5,839.76; (2) wage loss during the moving process to date of $38,160.00; and (3) housing expenses to date of $63,200.00." *Id.* at 2 n.6. He further explained that the Windsors would "continue to incur housing expenses at the rate of $9,400.00 per month through the rebuild of their home." *Id.* Attached to the letter were various of the Windsors' packing, storage, and moving receipts, and the like. Previously, counsel had shared with State Farm's counsel three one-page "leases" purporting to be rental agreements between three different LLCs and Francis Windsor. Each lease appears to be signed by Francis Windsor as tenant, and on behalf of the LLC-landlord by Mrs. Windsor. *See* Schmidt Decl. Ex. 4, at 8–10, ECF No. 78-4. As noted earlier, the rent the Windsors are ostensibly charging themselves is between $3,000 and $3,200 per property (totaling $9,400 per month).

State Farm subsequently moved for summary judgment on the Windsors' remaining claims. *See* Def.'s Mot. Summ. J., ECF No. 66; Def.'s Supp. Br., ECF No. 67. In opposing summary judgment, the Windsors indicated that State Farm still owed several outstanding insurance benefits, including additional living expenses. *See* Pls.' Opp'n Mem., at 17–18, 29, ECF No. 71. After that motion was fully briefed, the Windsors filed their own Rule 56 motion. *See* Pls.' Mot. Partial Summ. J., ECF No. 87; Pls.' Supp. Mem., ECF No. 88. State Farm has responded to the Windsors' summary judgment motion, *see* Def.'s Opp'n Br., ECF No. 93, and the Windsors have submitted a reply brief, *see* Pls.' Reply Mem., ECF No. 96. Those filings were inexplicably late. *See* E.D. Wis. Civ. L. R. 56 (requiring summary judgment response materials to be filed within 30 days of service of the motion and reply materials to be filed within 14 days of service of the response materials).

**SUMMARY JUDGMENT STANDARD**

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: [I must] construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647–48 (7th Cir. 2016)).

**DISCUSSION**

The Windsors assert that State Farm breached the homeowners policy and engaged in bad faith in processing their insurance claim. They seek summary judgment on the liability aspect of both claims regarding loss of use coverage. State Farm opposes the motion.

The parties agree that Wisconsin substantive law applies to this diversity action. *See* Pls.' Supp. Mem., at 9–13 (applying Wisconsin law); Def.'s Opp'n Br., at 11–17 (same). To prevail on a breach of contract claim in Wisconsin, the Windsors must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018) (citing

6

*Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008)). It is undisputed that the Windsors' homeowners policy is a valid contract. *See DeChant v. Monarch Life Ins. Co.*, 547 N.W.2d 592, 596 (Wis. 1996) ("We recognize that an insurance policy represents a unique type of legally enforceable contract." (citation omitted)). Thus, the issue here is whether State Farm breached that contract as a matter of law. In the insurance context, a breach "is a 'failure to pay the claim in accordance with the policy.'" *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 25, 798 N.W.2d 467, 474 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 374 (Wis. 1978)).

"The rules for interpreting insurance contracts are well-established: Insurance contracts are controlled by the same rules of construction as are applied to other contracts." *Falik v. Penn Mut. Life Ins. Co.*, 190 F. Supp. 2d 1156, 1162 (E.D. Wis. 2002) (quoting *Dowhower ex rel. Rosenberg v. W. Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 34, 613 N.W. 2d 557, 565), *vacated on other grounds*, 204 F. Supp. 2d 1155 (E.D. Wis. 2002). The goal in interpreting insurance contracts is "to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 665 N.W.2d 857, 864 (citing *Danbeck v. Am. Fam. Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 629 N.W.2d 150, 153). "The words of an insurance policy are given their common and ordinary meaning." *Danbeck*, 2001 WI 91, ¶ 10, 629 N.W.2d at 153–54 (citing *Henderson v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 423, 426–27 (Wis. 1973)). "If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law." *Folkman*, 2003 WI 116, ¶ 13, 665 N.W.2d at 864 (citing *Danbeck*, 2001 WI 91, ¶ 10, 629 N.W.2d at 154).

The Windsors argue that State Farm breached the homeowners policy by not timely paying their claim for additional living expenses. The Windsors don't identify any particular provision of the policy that State Farm allegedly violated. Instead, they insist that, under Wisconsin law, "an unpaid claim becomes overdue, becomes a breach of contract, 'if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss.'" Pls.' Supp. Mem., at 10 (quoting Wis. Stat. § 628.46(1)). That statute "is an additional provision of the insurance contract incorporated into it by operation of law." *Poling v. Wis. Physicians Serv.*, 357 N.W.2d 293, 298 (Wis. Ct. App. 1984) (citing *Anderson*, 271 N.W.2d at 379).

State Farm argues that the Windsors are not entitled to judgment as a matter of law on their breach of contract claim because they have not followed the policy's terms. The homeowners policy indicates that "[n]o action shall lie against [State Farm] unless, as a condition precedent thereto, there shall have been full compliance by [the Windsors] with all the terms of [the] policy." Malloy Declaratory J. Aff. Ex. 2, at 34. State Farm insists that, with respect to a potential claim for additional living expenses coverage, the Windsors failed to fully comply with two of their duties after loss. First, according to State Farm, the Windsors did not provide the insurer a "notice of loss." Second, State Farm says the Windsors did not provide the insurer a sworn "proof of loss" within 60 days after the loss. The policy provides as follows:

> 2. Your Duties After Loss. After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed:
>
>    a. provide notice of loss as soon as reasonably possible to us or our agent . . .
>
>    . . .

8

> e. submit to us, within 60 days after the loss, your signed, sworn proof of loss that sets forth, to the best of your knowledge and belief:
>
> . . .
>
> (7) receipts for additional living expenses incurred . . .

Malloy Declaratory J. Aff. Ex. 2, at 24–25.

It's clear that the plaintiffs are not entitled to judgment as a matter of law on their ALE claims. Although strict compliance with a policy's notice-of-loss and proof-of-loss requirements is not always required, it is impossible to say *as a matter of law* that the plaintiffs' failure to file (in particular) a proof of loss must be excused here. Factual disputes relating to the plaintiffs' communications, as well as any prejudice suffered by State Farm, would preclude judgment as a matter of law. *See Fehring v. Republic Ins. Co.,* 347 N.W.2d 595, 600 (Wis. 1984) (requiring a jury to sort out whether the plaintiffs had complied with the "essential purpose" of the policy's notice requirements), *overruled on other grounds by DeChant*, 547 N.W.2d at 598–99.

Moreover, as already noted, there is no evidence that the plaintiffs ever submitted *any* kind of formal claim (notice and proof of loss) seeking payment from State Farm. Thus, it is not even a matter of strict-versus-substantial compliance—it's a case of categorical *non*compliance with the policy's terms. Even Wisconsin's liberal regime for notice contemplates that insureds must file *some* kind of proof of loss with the insurer, for that is the filing that governs timeliness: "if an insurance policy's proof-of-loss period ends, the insured may nonetheless obtain coverage by filing [a proof of loss] within a year if the insurer cannot prove that it was prejudiced by the delay." *Bogusewski v. Life Ins. Co. of N. Am.,* 977 F. Supp. 1357, 1360 (E.D. Wis. 1997); *see also* Wis. Stat. § 631.81(1) ("Provided notice or proof of loss

9

is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit."). And under § 632.26(1)(b), an insured may be excused for filing a *late* notice, but not for filing *no* notice at all.

Nor can it be said that various positions taken during the course of litigation on other coverage issues could constitute a kind of ersatz proof of loss. As already noted, both the insurance policy and the statutes assume that there needs to be some kind of semi-formal declaration of the amount of loss before the relevant time period can begin running (or end). And that formal filing needs to be made with the insurer itself, or its agent, to allow the company to process the claim. This case is the poster child for why that makes sense: if the utterances of an insured's lawyer during litigation could sometimes "count" as a proof of loss, then insurers would never know when they were obligated to pay out, and insureds would never really know when the 60 days under the policy, or one year provided by statute, was set to expire. The insurer's litigation counsel defending claims for X,Y, and Z would be forced to act as a claims processor for claim A. That's not what the law envisions. Accordingly, the plaintiffs are not entitled to judgment as a matter of law. (State Farm appears to concede that resolution of damages, including the Windsors' eyebrow-raising claims for housing expenses, would require a jury to resolve.)[2]

State Farm has also filed a motion for summary judgment on the ALE claims. In light of the fact that plaintiffs have not filed a proof of loss, and that State Farm has not actually

---

[2] Of course, given Wisconsin's liberal notice regime, it's conceivable that the multiple communications from plaintiffs in this case could mitigate or remove any prejudice State Farm might have experienced from a filing delay if plaintiffs eventually file a proof of loss.

10

denied the ALE expenses, I conclude that the ALE claims are not ripe for adjudication. Having had no claim presented to it, State Farm hasn't even had a chance to say "yea" or "nay" yet. It seems as though the plaintiffs want to use this litigation as a claims-processing forum, having skipped the step of actually demanding payment from their insurer in the first instance under the terms of the policy. The *Yacht Club* case is instructive. *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.,* 509 F. App'x 919 (11th Cir. 2013). There, the insured sued its excess carrier for losses incurred in a hurricane. The insured never submitted a proof of loss against the excess carrier, and that carrier never denied the claim. The court concluded that the claim against the excess carrier wasn't ripe yet. "It is undisputed that The Yacht Club never submitted a sworn proof of loss to James River [the excess carrier] and that James River has not formally notified The Yacht Club that it has denied the claim. Given that James River has not formally denied the Yacht Club's claim, a breach of contract claim against James River is premature." *Id.* at 923. In sum, not only had the insured failed to submit a proof of loss, the insurer had never even denied the claim. Under those circumstances there could be no claim for breach of the policy.

Similarly, in *Burnett v. Country Mutual Insurance Co.*, plaintiffs sued their insurer for breach and bad faith following damage from a tornado. No. 12-CV-0019-SLC, 2012 U.S. Dist. LEXIS 204514, 2012 WL 12995656, at *3 (W.D. Wis. Apr. 3, 2012). Plaintiffs filed their lawsuit after submitting a claim, but before the insurer denied the claim. The insurer moved to stay or dismiss the claims on the ground that it had never actually denied the claim. The court agreed: "I agree with defendant that plaintiffs jumped the gun. Plaintiffs do not deny that defendant has not yet denied their claim for payment of the policy benefit." *Id.* "Accordingly, unless and until defendant denies plaintiffs the relief to which they claim to be

11

entitled under the insurance policy, neither their breach of contract nor bad faith claim is ripe." *Id.* at 4. *See also Binsfeld v. Home Mut. Ins. Co.,* 15 N.W.2d 828, 830 (Wis. 1944) (dismissing action "without prejudice to timely re-commencement of another action on this policy upon the furnishing of proofs of loss in conformity to the terms of the policy"); *Fowler v. Mut. Life Ins. Co. of New York,* No. 91 C 5784, 1992 U.S. Dist. LEXIS 554, 1992 WL 14146, at *5 (N.D. Ill. Jan. 16, 1992) ("We conclude that Mr. Fowler's claims for 1989 and 1990 benefits are premature and not justiciable at this time. . . . Mr. Fowler never submitted a claim or proof of loss for 1989 or 1990. The policy requires such notice.").

We find ourselves in a similar position here. The plaintiffs' assertion of living expense damages arose during this lawsuit and the insurer, which is still trying to ascertain the nature of the claim, has not actually denied the claim. As such, the plaintiffs' claims for breach of contract and bad faith are premature, at best. The upshot is that the defendant's motion for summary judgment on the ALE claims will be granted. However, because it is conceivable that plaintiffs could refile such claims in the future, the claim for ALE will be dismissed *without prejudice*. In the event State Farm actually denies coverage (formally or in a *de facto* sense) after the plaintiffs submit something to State Farm that qualifies under the law as notice and a proof of loss, the plaintiffs could theoretically bring a new claim for breach and/or bad faith on that basis.

## CONCLUSION

The Windsors are not entitled to judgment as a matter of law on their ALE claims. Accordingly, for all the foregoing reasons, the court **DENIES** the plaintiffs' motion for partial summary judgment, ECF No. 87. State Farm's motion for summary judgment, ECF No. 66, on the ALE claims is **GRANTED** in part: the ALE claims are dismissed without prejudice
12

to the plaintiffs' ability to refile such claims if they become ripe. At this point, the court will **STAY** this action rather than dismiss it. The parties are directed to confer and submit a report by June 15, 2026, indicating the status of the ALE issue and a proposal for future scheduling of the case, if any.

    **SO ORDERED** this 13th day of March, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge